

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGNIIA
### Richmond Division

UNITED STATES OF AMERICA

v.                                    Criminal No. 3:08cr186-03

CLIFFORD NOEL

### MEMORANDUM OPINION

This motion is before the Court on the MOTION TO RECONSIDER PRODUCTION OF MATERIALS (Docket No. 98) filed by Clifford Noel, the Defendant. For the reasons set forth below, the motion will be denied.

### BACKGROUND

On April 21, 2008, Spencer Peters, Terrence Peters, and the Defendant were indicted on a charge of conspiracy to possess cocaine base with intent to distribute it. In a Superseding Indictment returned on November 6, 2008, the defendants were charged with the same crime and also with conspiring to possess firearms in furtherance of drug trafficking activity, a violation of 18 U.S.C. § 924(o).

On October 7, 2008, the parties executed an Agreed Discovery Order (Docket No. 18) which, _inter alia_, required

the disclosure of Jencks[1] and Giglio[2] materials three days before trial.[3] The record reflects that the United States satisfied that obligation in this case by providing discovery to the defendant's counsel on October 31, 2008 and again on January 14, 2009, six days before trial.

Following a jury trial, the Defendant and his two co-defendants were convicted on both counts of the Superseding Indictment. Noel filed several post-trial motions which were denied. (See Docket Numbers 75, 76, 77, 80.) His co-defendants did not join those motions or file any of their

---

[1] "Jencks materials" are statements made by prosecution witnesses that are required to be disclosed by a prosecutor under the Jencks Act, 18 U.S.C. § 3500.

[2] The rule set forth in Brady v. Maryland, 373 U.S. 83 (1963), requires only that prosecuting attorneys disclose any evidence that is exculpatory and is "material" to the Defendant See id. Evidence that is not exculpatory, but serves to impeach the credibility a Government witness must also be disclosed if it is material. See Giglio v. United States, 405 U.S. 150, 154 (1972). Evidence tending to affect the credibility of a government witness is typically referred to as "Giglio material." See United States v. Beckford, 962 F.Supp. 780, 786 (E.D.Va. 1997). As it is simply a subset of Brady material, the disclosure of Giglio material is subject to precisely the same analytical structure as exculpatory evidence. See id. (citing United States v. Bagley, 473 U.S. 667, 676 (1985)).

[3] The order also obligated the United States to provide Brady material but did not specify a time for that production. Brady material must be disclosed in sufficient time to be of meaningful use to the defendant. Beckford, 962 F.Supp. at 788. Neither party has raised an issue respecting disclosure of Brady material.

2

own. They have been sentenced and have filed their respective Notices of Appeal.

The Motion to Reconsider recites few facts and did not even identify what order was sought to be reconsidered. (See Def. Mem. at 1.) The ensuing briefing did not clarify the situation. Hence, the Court convened counsel by a telephone conference and directed that they file written responses to several questions. (Order dated July 17, 2009 (Docket Number 127).)

In response to those questions, Noel asserts that reports of witness debriefings were requested in the text of his Motion to Continue Sentencing (Docket No. 68) and his first Motion for New Trial (Docket No. 80). That assertion is correct, but it ignores the fact that by Order entered on April 2, 2009 (Docket No. 83), the Court denied, without prejudice, the requests for document production that were imbedded in those two motions because it was unclear what documents were sought and why they were sought. Noel's counsel was instructed to file a new motion respecting the issue of the disclosure of the debriefing report by April 13, 2009.

The Motion to Reconsider therefore appears to be the defendant's belated compliance with the directive to file by April 13 a new pleading directed to the production of

3

debriefing reports.[4]  This opinion addresses only the Motion to Reconsider.

## FACTS PERTINENT TO THE
## MOTION TO RECONSIDER

This case has its origin in a drug conspiracy investigation begun in August 2006 by the Bureau of Alcohol, Tobacco and Firearms ("ATF") and the Richmond Virginia Police Department.  The investigation was referred to as the "Island Wind" or the "Newtown Boys" investigation.  Many people were interviewed by the lead ATF Agent, Donald Spears, and by various Richmond Police Department officers.  Separately, but during the time when the Island Wind investigation was underway, the Richmond Police began to investigate a murder that occurred in Richmond (the "Ambrose Carpenter murder").

As part of the Island Wind investigation, ATF Agent Spears interviewed a witness named Anthony Johnson on January 18, 2007 (the "Johnson 2007 Report").  The focus of that interview was the drug conspiracy that was the subject

---

[4] By the same Order, Noel's first Motion for New Trial also was denied without prejudice to the filing, by April 13, 2009, of a replacement motion which was to be documented by citations to the record and which was to set out clearly what claims were asserted as the basis for a new trial.[4] The replacement motion for new trial was filed on April 13, 2009.  It alleges a failure to produce documents, and it is the subject of a separate opinion issued simultaneously herewith

4

of the Island Wind/Newtown Boys investigation.  At the end of the interview, Agent Spears asked Johnson about his knowledge of any violent crimes committed by the Island Wind/Newtown Boys conspirators.  Johnson responded that he had heard that Terrence Peters had arranged to have a woman named "Cherry" killed.  Johnson never saw nor ratified the Johnson 2007 Report.  Pursuant to the Agreed Discovery Order in this case, the Johnson 2007 Report (and numerous other documents) were produced to Noel's counsel on January 14, 2009, six days before trial.

In October 2008, Noel had been tried and convicted of the Ambrose Carpenter murder (the "State case" or the "Carpenter murder").  Noel's counsel in the State case is also his counsel in this case.  Johnson testified in the State case that Noel had shot Carpenter, an act of violence by a member of the conspiracy that Johnson did not mention in his interview with Agent Spears on January 18, 2007. When the Johnson 2007 Report was disclosed by the prosecution in the federal case, Noel's counsel moved to vacate Noel's conviction in the State case.  Upon agreement of the State prosecutors, the State conviction was vacated and a new trial was ordered.

The record of that hearing shows that Spears inadvertently did not produce the Johnson 2007 Report to

5

the State prosecutor because in it Johnson made no mention of Carpenter (referring only to the murder of a woman named "Cherry") and thus Spears did not consider the statement to be impeaching or exculpatory. The record of the State hearing also shows that Richmond Police Detective Mills inadvertently failed to disclose to the State prosecutor a 2006 interview of Johnson. Those two inadvertent nondisclosures prompted the State prosecutor to suggest a new trial on the Carpenter murder to which Noel's counsel agreed. Thereupon, the State court vacated Noel's State conviction for the Carpenter murder and ordered a new trial. Subsequently, the State prosecutor *nolle prossed* the Carpenter murder charge.

Those developments prompted Noel's counsel to file the Motion to Reconsider. In that motion, Noel seeks production of all "Federal Reports of Investigation" on the Newtown Boys/Island Wind investigation and the "Richmond Law Enforcement File on the Investigation of this Drug Conspiracy." (Def. Mem. at 2.)

## DISCUSSION

Noel's motion recites no reason for the request for production of the "Federal Reports of Investigation" which

6

have not already been produced to her.[5]   According to the
United States, the federal reports that were not produced
do not contain exculpatory or impeaching information about
Noel or relate to ongoing investigations not involving
Noel.  (Gov. Mem. at 2.)  In support of the request for the
Richmond Police investigative file, Noel says that he "is
seeking the entire [State] file due to the Commonwealth's
lack of knowledge as to the existence of this exculpatory
evidence in the possession of its own police and the belief
that other exculpatory information exists as previously
alleged." (Def. Mem. at 3.)

     The motion does not articulate what "this exculpatory
evidence" is, but the reference appears to be to the
Johnson 2007 Report. (See id.)   Nor does the motion
articulate the basis for the asserted "belief that other

---

[5] Noel also requests that those same documents be produced
for in camera review by the Court. (Def. Mem. at 5.)  In
order to establish that in camera review of evidence for
purposes of ascertaining its value under Brady and Giglio
is appropriate, the defendant has the burden of
"identify[ing] the requested confidential material with
some degree of specificity" and making "a plausible showing
that the evidence would be both material and favorable."
United States v. Trevino, 89 F.3d 187, 189-90 (4th Cir.
1996).  The Fourth Circuit has stated unequivocally that
"mere speculation that the information may be helpful is
insufficient to justify an in camera review." United States
v. Gilchrist, 119 Fed.Appx. 485, 491 (4th Cir. 2005)
(unreported).  As set forth below, Noel has offered no more
than speculation in support of his claim that in camera
review is appropriate.  Therefore, his request for in
camera review of the investigative file will be denied.

exculpatory information exists." (Id.) However, the last sentence in the motion suggests that the basis for the belief is the recent development in the:

> State court proceedings, federal trial testimony of several witnesses identifying Defendant [Noel] as a member of the conspiracy where their corresponding debriefs disclosed in this case made no mention of Defendant's [Noel] participation, and the manner of deciding what information was discoverable.

(Id. at 5.) The first point (i.e., the "recent developments in the State court proceedings) is apparently intended to link with the reason offered by Noel for seeking the entire Richmond Police file, specifically, that the State prosecutor did not know that the Johnson 2007 Report was in the Richmond Police file and thus did not produce it. The straight-forward response to this argument is that, in the federal case, the federal prosecutor actually produced the Johnson 2007 Report to Noel's counsel. In so doing, the federal prosecution satisfied his obligation under the Agreed Discovery Order and Giglio by disclosing the allegedly impeaching statement.

Moreover, upon Noel's motion and the agreement of the prosecution, neither Johnson nor any other witness was allowed to testify to the Carpenter murder in the federal case. Therefore, the alleged impeaching statement had no

potentially probative value at all in the federal case because there was in that case nothing that it could possibly impeach.

In essence, Noel's point is that, because the State prosecutor did not satisfy his Giglio obligation, it is likely that the federal prosecutor likewise was deficient in fulfilling his obligation because, after all, the Johnson interview occurred in a case on which federal and state investigators were working together to some extent. (Def. Mem. at 1.)  That argument simply has no force at all, particularly not where, as here, the federal prosecutor actually produced the allegedly impeaching statement.  And, that act certainly underscores the representation made by the federal prosecutor that he reviewed the files and that even potentially impeaching statements were produced to Noel's counsel. (Gov. Mem. at 2.)

The second contention (i.e., that in the federal case other witnesses testified at trial to Noel's involvement in the conspiracy when the record of their debriefing did not mention that he was a member of the conspiracy) does not advance Noel's cause at all.  The federal prosecutor actually produced debriefing reports for those witnesses and Noel's counsel actually cross-examined the witnesses

about the alleged inconsistencies. (Tr. Tr. at 450.) She also examined the interrogating agent about the interviews and there was considerable testimony addressed to explaining them. (Id. at 507-08, 549-53.)

Noel's third point is "the manner of deciding what information was discoverable," whatever that may mean. The record simply does not show "the manner of deciding what information was discoverable" in the federal case, other than the statement by the prosecutor that he reviewed the federal reports of interviews and the State file and produced in the federal case all information that was potentially exculpatory or impeaching of any trial witness. (Gov. Mem. at 2.) That certainly is no ground for granting the Motion to Reconsider.

## CONCLUSION

The fundamental premise of the Motion to Reconsider is that, because there was an inadvertent failure on the part of Agent Spears to disclose the Johnson 2007 Report to the prosecutor in the State case, there might be other undetected, potentially impeaching material relevant to the federal drug conspiracy prosecution in the ATF's files or in the files of the Richmond Police. That argument lacks merit for several reasons.

First, the Johnson 2007 report was disclosed in this case. That alone undercuts Noel's premise that Spears' review of ATF files in this case was less than thorough.

Second, the prosecuting Assistant United States Attorney himself reviewed the federal and state files in this case and has attested that any exculpatory or impeaching material was disclosed before trial. That, of course, differentiates this case from the State case.

Third, the State case was a case that involved the murder of Ambrose Carpenter. Nothing in the Johnson 2007 Report mentioned Ambrose Carpenter. Thus, the report was of impeaching value only because, when Johnson was asked about the drug conspirator's acts of violence, he mentioned only the hearsay report of another murder.

The omission of a reference to the Carpenter murder was conceptually of impeachment value in the State case because Johnson did not mention the Carpenter murder. In reality, its impeaching value was ephemeral, and Agent Spears' failure to recognize it as of potential, albeit marginal, impeachment value in the State murder case is understandable since the statement made no mention whatsoever of Carpenter. Thus, Spears' failure to give that report to the State prosecutor in the Carpenter murder case is not at all probative of a disposition on the part

11

of Agent Spears to hold back discoverable information.  Nor does it evince a less than thorough search for such information in the federal case.

Noel seeks to bolster his position by pointing to the failure of a Richmond Police officer to turn over to the defense in the State case a 2006 debrief report of Johnson in the Carpenter murder case.  The hearing in the State case shows that the nondisclosure was inadvertent, but whatever can be said about the nondisclosure in the State case is of no moment in this case because the report has not been shown to have any bearing on any issue in the federal drug conspiracy case.

For the reasons outlined in this opinion, the record here discloses no reason to order the disclosure of the requested materials and, therefore, the MOTION TO RECONSIDER PRODUCTION OF MATERIALS (Docket No. 98) therefore will be denied.

It is so ORDERED.

_____/s/_____  *REP*
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date:  August 13, 2009

12