IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



UNITED STATES OF AMERICA

v.                        Criminal No. 3:08cr186-03

CLIFFORD NOEL

### MEMORANDUM OPINION

This matter is before the Court on the REPLACEMENT MOTION FOR NEW TRIAL (Docket No. 84) filed by Clifford Noel. A previous MOTION FOR NEW TRIAL (Docket No. 80) was denied without prejudice so that the reasons for seeking a new trial could be cogently set forth with supporting authority. (Order dated April 2, 2009 (Docket No. 83).) After the replacement motion was filed, the Court heard argument, and the asserted grounds for a new trial were narrowed to a single issue: whether the prosecution violated the principle set by Giglio v. United States, 405 U.S. 150 (1972) and its progeny in not disclosing the statements made by two witnesses, Michael Matthews and Anthony Johnson, in their pre-trial preparation interviews with the prosecutor. Supplemental briefs were addressed to that dispositive issue. For the reasons set forth below, the REPLACEMENT MOTION FOR NEW TRIAL (Docket No. 84) will be denied.

## I. BACKGROUND FACTS

Matthews and Johnson were members of a drug organization headed and run by Terrence Peters with the aid of his brother and principal lieutenant, Spencer Peters. Matthews and Johnson both pleaded guilty to membership in the conspiracy and then testified at the joint trial of Terrence and Spencer Peters and Clifford Noel.

During the investigation of the drug conspiracy, Matthews and Johnson were interviewed or "debriefed" by ATF Agent Donald Spears. Matthews was debriefed on five occasions and the reports of those interviews were produced before trial to Noel's counsel pursuant to an Agreed Discovery Order. Johnson was debriefed once by Agent Spears. The report of that debrief likewise was delivered to Noel's counsel pursuant to the Agreed Discovery Order.

During his "debriefs," Matthews outlined the hierarchy and activities of the conspiracy and he identified Noel as a member of the conspiracy,[1] but did not give many details about Noel's role in the conspiracy or his conduct in furtherance of its objectives. In his debriefing interview, Johnson outlined the

---

[1] Matthews focused on Noel in one interview in which Matthews outlined how he, Noel and others had murdered Ambrose Carpenter at the direction of Terrence Peters who also helped the conspirators in their flight from prosecution.

hierarchy and activities of the conspiracy. Johnson did not identify Noel as a member of the conspiracy in the non-exhaustive list of conspirators that he was asked about by Agent Spears (who did not know about Noel's involvement when he interviewed Johnson) or volunteer Noel's name independently of that question.

As distilled by argument and two rounds of briefing, the issue becomes whether Noel is entitled to a new trial because the prosecutor did not disclose that, in his pretrial preparation, Matthews gave more details about Noel's role than he had in the debriefs and that Johnson had implicated Noel extensively in the trial preparation where he had not mentioned Noel in the debriefing.

At trial, Matthews described the operation of the drug distribution house in great detail, including the shift work he did at the conspirators' distribution house on 5th Avenue with Noel. (Tr. Tr. at 49.) Matthews stated that he and Noel would each typically sell about one ounce of crack cocaine per day. (Id. at 53.) Matthews also identified Noel as being present in the later operations at the Detroit Avenue house, and stated that Noel and he were on approximately the same level of the organization's hierarchy. (Id. at 64, 68.) Noel's counsel cross-examined Matthews extensively to show that, in the five

debriefs, Matthews had not recited the detailed involvement in the drug dealing activities which Matthews described at trial.[2] Matthews admitted that he could not remember what he had told Agent Spears but asserted that he thought that he had outlined Noel's drug dealing activities. Agent Spears confirmed that Matthews had not given a detailed debrief about Noel's involvement. (Tr. Tr. at 531-33.)

Johnson testified at trial that he had purchased crack cocaine from Noel at the 5th Avenue location, and had seen him, but had not purchased crack from him, at the Detroit Avenue location. (Id. at 428, 432.) Johnson also testified that Noel carried a firearm regularly and would use the firearm to threaten errant drug purchasers. (Id. at 435-37.) During cross-examination by Noel's counsel, Johnson stated that he did not remember whether or not he had mentioned Noel's actions or presence to Spears during his interview. (Id. at 450-51.) Spears later confirmed that Johnson had not mentioned Noel's actions during the January 18, 2007 interview. (Id. at 550-51.)

Before Matthews and Johnson testified at trial, the Assistant United States Attorney ("AUSA") conducted preparatory

---

[2] On Noel's motions and the argument of the prosecutor, Matthews was not allowed to testify about the murder of Ambrose Carpenter or the subsequent aid given the conspirators by Terrence Peters in their flight.

interviews of both witnesses. (Gov. Mem. at 6, 7.) The AUSA represents that, during those interviews, the statements of Johnson and Matthews were consistent with their trial testimony, but that both added details that had not been inquired into during previous debriefings. (Id.) The Court accepts the prosecutor's representations that the testimony given at trial by Matthews and Johnson was consistent with what they told the prosecutor in their pretrial interviews with him.

A review of the debrief reports discloses that Matthews' trial testimony was far more detailed in describing Noel's involvement in the drug conspiracy than were his reports in the debriefs. It is also clear that, in Johnson's debrief, he did not mention Noel but it also appears from the record that Johnson was not asked about Noel.

Noel filed a Motion for a New Trial, in which he alleged discovery violations, the nature of which was quite unclear. (Docket Number 84.) At oral argument, Noel's counsel admitted that the remaining salient issue was whether the AUSA should have disclosed, under the rule set forth in Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150, 154 (1972), the content of his preparatory interviews with Matthews and Johnson just before trial to Noel. (Order dated May 29, 2009 (Docket Number 102).) The parties have since filed

supplementary briefing respecting that issue. For the reasons set forth below, Noel's motion will be denied.

## II. DISCUSSION

### A. Standard of Review

There is no general Constitutional right to discovery in a criminal case. See Pennsylvania v. Ritchie, 480 U.S. 39, 59-60 (1987). The rule set forth in Brady v. Maryland, 373 U.S. 83 (1963), requires only that prosecuting attorneys disclose any evidence that is exculpatory and is "material" to the Defendant See id. Evidence that is not exculpatory, but serves to impeach the credibility of a Government witness also must be disclosed if it is material. See Giglio v. United States, 405 U.S. 150, 154 (1972). Evidence tending to affect the credibility of a government witness is therefore typically referred to as "Giglio material," after the case that created the rule mandating its disclosure. See United States v. Beckford, 962 F.Supp. 780, 786 (E.D.Va. 1997). Because Giglio material is simply a subset of Brady material, the disclosure of Giglio material is subject to the same analytical structure as exculpatory evidence. See id. (citing United States v. Bagley, 473 U.S. 667, 676 (1985)). The material exculpatory or impeaching evidence must be disclosed to the Defendant "in time for its effective use at trial." Beckford, 962 F.Supp. at 788.

In order to prove that a violation of the Brady/Giglio rule has occurred, the defendant must demonstrate that "the undisclosed evidence was (1) favorable to the defendant; (2) material; and (3) that the prosecution had the materials and failed to disclose them." United States v. Stokes, 261 F.3d 496, 502 (4th Cir. 2001). The United States does not contest the third element, that it had possession of Matthews' and Johnson's statements during pretrial preparatory interviews and did not disclose them. (Gov. Mem. at 7, 8.) Resolution of Noel's motion therefore turns on the first two elements: whether those statements were favorable to Noel, and whether they were material. See Stokes, 261 F.3d at 502.

**B. Favorability**

As noted above, evidence can be favorable to the defendant if it can be used to impeach the credibility of a government witness. See United States v. Hoyte, 51 F.3d 1239, 1243 (4th Cir. 1995) (citing Giglio, 405 U.S. at 154-55.) Noel alleges that the notes of the AUSA's pretrial interviews with Matthews and Johnson should have been disclosed because they would have been useful to impeach Matthews and Johnson with the purported inconsistency in the statements or because the timing of the statements demonstrated the possibility of a motive to fabricate. (Def. Supp. at 9; Def. Rep. at 1-2.)

Federal Rule of Evidence 613 governs the use of prior statements of a witness for impeachment purposes. Rule 613 "first requires that a prior statement be inconsistent." United States v. Barile, 286 F.3d 749, 755 (4th Cir. 2002) (internal quotations omitted). A prior statement is inconsistent within the meaning of the rule if "taken as a whole, either by what it says or by what it omits to say affords some indication that the fact was different from the testimony of the witness whom it sought to contradict." Id. (internal quotations omitted). "Any statement is inconsistent if under any rational theory it might lead to any relevant conclusion different from any other relevant conclusion resulting from anything the witness said." 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 613.04[1] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2001). If the asserted inconsistency is predicated on an omission, the prior statement is inconsistent "if it would have been 'natural' for the witness to include the [omitted] details in the earlier statement." United States v. Meserve, 271 F.3d 314, 320-21 (1st Cir. 2001).

The pretrial interviews of Matthews and Johnson were not inconsistent with their trial testimony. (Gov. Mem. at 7, 8.) The question, however, is whether those pretrial interviews (and, perforce, the accompanying trial testimony) were

inconsistent with the investigative interviews of Matthews and Johnson conducted by Spears. Noel has a colorable claim that Matthews' statements at trial are inconsistent with those in his first interview. During that first interview, Matthews "detailed the hierarchy of the organization" and gave a list of individuals who were on the same organizational level as he - a list that did not include Noel.[3] (Def. Ex. 2 at ¶¶ 13, 14.) Conversely, at trial, when similarly asked to detail the organization's hierarchy, Matthews did include Noel as a member of the conspiracy. (Tr. Tr. at 67-68.) Matthews also stated that he had never altered his story during his several interviews with law enforcement. (Id. at 76.) While it is true that the two statements are not flatly contradictory, the latter addition of a significant detail in the face of a very similar question could support a claim of inconsistency. See Barile, 286 F.3d at 755. Furthermore, the existence of the inconsistent pretrial preparatory interview might have been useful to defense counsel in impeaching Matthews' statement that he had never changed his story.

---

[3] It is worth noting that Noel was identified as being involved in the Carpenter murder during Matthews' third interview and as a confederate of Terrence Peters during the fourth. (Def. Ex. 4 at ¶¶ 6-8; Def. Ex. 5 at 3.) However, in neither the third or fourth interview was Noel alleged to be a member of the drug distribution operation.

The timing of the addition of Noel to Matthews' description of the organizational roster also serves to call the credibility of that description into question. The first known, unambiguous inclusion of Noel as part of the drug operation's organizational hierarchy came just before trial, after Noel had been made a target of the investigation and after Matthews struck his cooperating plea agreement with the United States. (See Tr. Tr. at 74.) The timing of that added detail therefore does have some marginal relevance to the credibility of the addition, as Noel argues. (Def. Supp. at 9 (citing Chavis v. State of North Carolina, 637 F.2d 213, 218-19, 223 (4th Cir. 1980)[4].)

The inconsistencies in Johnson's testimony are materially similar to those of Matthews. When Spears asked Johnson to describe the organization's hierarchy during his interview, Johnson did not include Noel, despite including other members of the conspiracy who were on the same hierarchical level as Noel. (Def. Ex. 7 at ¶ 5-6.) Furthermore, when asked about violent acts perpetrated by members of the organization, Johnson mentioned only Terrence Peters' supposed murder of "Cherry." (Id. at ¶ 11.) At trial, however, Johnson included Noel as a

---

[4] In Chavis, the Fourth Circuit held that a state prosecutor should have disclosed a prior statement made by the defendant that was consistent with his trial testimony and was made by correcting the inconsistent portions of a prior inconsistent statement. Id.

low-level member of the conspiracy. (Tr. Tr. at 426-27, 432.) Furthermore, Johnson detailed Noel's use of a firearm to intimidate prospective drug buyers - an act that could reasonably be considered an "act of violence" within the ambit of Spears' interview question about that topic. (Tr. Tr. at 435-37.) The shift in Johnson's testimony similarly occurred after Noel had been identified as a target of the investigation and after Johnson made his cooperating plea agreement with the United States. (Id. at 451.) Therefore, the report of Johnson's pretrial interview with the AUSA would also qualify as favorable evidence.

## C. Materiality

Even if the undisclosed evidence is favorable, a violation of the Brady/Giglio rule only occurs if that evidence is material. See Stokes, 261 F.3d at 502; see also United States v. Brunson, 300 Fed.Appx. 240, 241 (4th Cir. 2008) (unreported) ("Though the evidence may have had limited impeachment value, its nondisclosure does not undermine confidence in the result of his trial. . . . Accordingly, the district court did not abuse its discretion in denying [the defendant's] motion for a new trial."). For purposes of the Brady analysis, a piece of evidence is material if it generates a "reasonable probability" of a different result at trial, had the evidence been available.

-11-

See Moseley v. Branker, 550 F.3d 312, 318 (4th Cir. 2008). "'The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.'" Id. (quoting Kyles v. Whitley, 514 U.S. 419, 434 (1995)). In general, cumulative impeachment evidence is not material. See Hoyte, 51 F.3d at 1243.

The decision in Hoyte is very instructive in this instance. In Hoyte, a cooperating witness, through the course of multiple interviews, gave a number of different versions of events leading to a homicide. 51 F.3d at 1242. Two of these inconsistent statements were disclosed to the defense, but a third was not. Id. The defense counsel impeached the witness using the inconsistent statements that it did have, but moved for a new trial based on the United States' failure to disclose the third statement. Id. The Fourth Circuit sustained the district court's decision denying the motion for new trial on the ground that the witness already had been impeached based on his cooperating plea agreement and his other inconsistent versions of the story. Id. at 1243. Disclosure of the third inconsistent statement would merely have resulted in further,

cumulative impeachment of an already-impeached witness and therefore the third statement was not material. Id.

Similarly, in this case, disclosure of the pretrial preparatory interviews conducted of Matthews and Johnson by the AUSA merely would have been cumulative impeachment evidence. Even assuming that the content of those interviews had some impeachment value concerning the consistency of the witnesses' respective versions of events, both Matthews (Tr. Tr. at 101) and Johnson (Id. at 450) were cross-examined about the consistency of their statements. Both said that, to the best of their recollection, their statements had been consistent over time. (Id. at 101, 450-51.) Furthermore, both were also questioned about the possibility of a motive to fabricate based on their respective cooperating plea agreements and about the possibility of sentence reductions based on Rule 35. (Id. at 100-01, 451.) All of these points were emphasized to the jury in closing arguments by Noel's counsel.

Noel's argument that the impeachment evidence was material is further eroded by the weight of the evidence marshaled against him. See United States v. Erby, 246 Fed.Appx. 228, 232 (4th Cir. 2007)(unreported) (denying motion for new trial when single new piece of evidence of innocence was balanced against significant evidence of guilt). Folukae Dove's testimony was

consistent in all material respects with that of both Johnson and Matthews. (See Tr. Tr. at 142, 149-53.) Robert Jones, another coconspirator, also implicated Noel as a member of the conspiracy, and provided details about the operation of the organization that matched those provided by the other witnesses. (Id. at 274-82.) Stanley Turner, a cocaine user who purchased from the Peters' operation, stated that he would occasionally buy cocaine from Noel, in Noel's capacity as a member of the organization. (Id. at 360-62.) Therefore, the testimony of at least three witnesses both corroborated the details given by Matthews and Johnson and provided independent evidence of Noel's guilt. In the face of this evidence, a small amount of questionably-useful, cumulative impeachment evidence does not undermine the outcome of the trial, and therefore is not material. See Hoyte, 51 F.3d at 1243.

In his reply, Noel cites the Fourth Circuit's decision in Spicer v. Roxbury Correctional Institute, 194 F.3d 547 (4th Cir. 1999), for the proposition that the AUSA's notes of the pretrial preparatory interviews were material evidence. (Def. Rep. at 3.) Unfortunately for Noel, Spicer does not help his case. It is true that the Fourth Circuit in Spicer found a Brady violation when the state prosecutor failed to disclose a prior inconsistent statement of a key witness in the case. See 194

F.3d at 560-61. There are, however, two major factual differences between Spicer and Noel's case: first, the evidence left undisclosed in Spicer was essentially the only existing evidence that impeached the witness's statement. See id. In this case, conversely, both Matthews and Johnson were cross-examined about their statements' inconsistencies. The second major difference is that the evidence against the defendant in Spicer was much weaker than that arrayed against Noel. See id. For those reasons, Hoyte, not Spicer, guides the inquiry here.

## III. CONCLUSION

For the foregoing reasons, the REPLACEMENT MOTION FOR NEW TRIAL (Docket Number 84) will be denied.

It is so ORDERED.

/s/       REP
Senior United States District Judge

Richmond, Virginia
Date: August 18, 2009