
IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                    Criminal No. 3:08CR186

CLIFFORD NOEL

## MEMORANDUM OPINION

Clifford Noel, a federal inmate proceeding pro se, submitted this motion and a supporting memorandum under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("§ 2255 Motion"). The Government has responded. Noel filed an unsworn Reply. The matter is ripe for disposition. For the reasons stated below, the Court will deny the § 2255 Motion.

## I.  FACTUAL AND PROCEDURAL HISTORY

On November 6, 2008, the grand jury charged Noel, and his co-defendants Terrence and Spencer Peters, with conspiracy to distribute and possess with intent to distribute fifty grams or more of cocaine base (Count One), and conspiracy to possess firearms in furtherance of a drug trafficking offense (Count Two). (Superseding Indictment 1-2, ECF No. 26.) On January 16, 2009, the Government filed a notice pursuant to 21 U.S.C. § 851 of its intent to seek an enhanced sentence for Noel based on a prior felony drug offense. (ECF No. 49, at 2.) On January 23, 2009, a jury found Noel, Terrence and Spencer Peters guilty of

both counts. The Court found the § 851 enhancement inapplicable to Noel and sentenced him to 360 months of imprisonment on Count One and a concurrent 240-month sentence on Count Two. (J. 2, ECF No. 143.)

On appeal, Noel argued that: (1) he was "denied due process when a potential juror made a statement regarding murder in response to whether she had read anything about any of the Appellants"; (2) the Court erred in denying his motion for a new trial based on Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972); (3) "he was denied his right to testify on his own behalf because he chose not to testify for fear that his state conviction, which was later invalidated, would be used to impeach him"; and (4) insufficient evidence existed to convict him. See United States v. Peters, 392 F. App'x 161, 162-63 (4th Cir. 2010). The United States Court of Appeals for the Fourth Circuit affirmed his convictions. Id. at 164. The United States Supreme Court denied Noel's petition for a writ of certiorari. Peters v. United States, 131 S. Ct. 1522 (2011).

## II. GROUNDS FOR RELIEF

Noel brings twenty-nine claims that are repetitive, vague, conclusory, are belied by the record, and are wholly meritless. As a preliminary matter, the Court observes that Noel and his

co-defendants, Terrence Peters and Spencer Peters, raised the same claims as Noel in what appear to be identical submissions save the sporadic and inconsistent changing of defendants' and their attorneys' names. Because the § 2255 Motion and the Reply are nearly carbon copies of Terrence and Spencer Peters's submissions, both contain numerous joint arguments and supporting facts that make little sense, or are inapplicable to Noel, and thus, will be summarily dismissed.

In his § 2255 Motion, Noel raises the following claims for relief:[1]

Claim I:    Trial counsel provided ineffective assistance[2] by:
(1) failing to move to dismiss based on a violation of Noel's speedy trial rights;
(2) failing to seek a Bill of Particulars;
(3) failing to have a "suppression hearing" (§ 2255 Mot. Ex. A, at 1, ECF No. 166-1);
(4) failing to object to photographs of "some of the defendants apparently brandishing assault weapons during the course of trial" (id.);
(5) "fail[ing] to use the various debriefings of the Government's witnesses to impeach them" (id.);
(6) "allow[ing] their client(s) to stipulate to drug weights,

---

[1] The Court corrects the capitalization in the quotations from Noel's submissions.

[2] "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

quantities and purities which they knew . . . were inconsistent with documented evidence in the record" (<u>id.</u>);

(7) "fail[ing] to properly object . . . regarding the missing search warrant" (<u>id.</u>);

(8) failing to adequately prepare for the jury trial;

(9) "fail[ing] to formerly object to the withholding of witness names and/or relevant information" (<u>id. at 2</u>);

(10) "failing to challenge the Government's misconduct on the record, whereby jeopardizing appellate review" (<u>id.</u>);

(11) "failing to challenge the insufficiency of the evidence" (<u>id.</u>);

(12) failing to "move for a new jury pool" (<u>id.</u>);

(13) "failing to effectively cross-examine the Government's witnesses" (<u>id.</u>);

(14) "improperly influencing the defendant on the subject of whether or not to testify" (<u>id.</u>);

(15) "failing to even request an 'informant jury instruction'" (<u>id.</u>);

(16) "failing to raise [the] lack of or missing discovery in pre-trial motions" (<u>id.</u>);

(17) "failing to properly raise certain double jeopardy violations concerning prior acquitted conduct" (id.);

(18) "failing to "move[ ] to exclude evidence of Spencer Peters' 2005 arrest" (<u>id.</u>); and,

(19) failing to object pre-trial that discovery was missing regarding the allegation of the superseding indictment" (<u>id.</u>).

Claim II:        Appellate counsel provided ineffective assistance by:
      (1)   failing to challenge the sufficiency of the evidence; and,
      (2)   failing to appeal the "issues surrounding the search warrant(s)" (§ 2255 Mot. 5).

Claim III:     "Multiple violations of the Defendant(s) due process rights" (id.):
      (1)   "the prosecution failed to secure relevant state court trial documents and were admonished in court regarding this action" (id.)
      (2)   the Court failed to properly instruct the jury on conspiracy;
      (3)   "the jury form was devoid of relevant information" (id.);
      (4)   "the Defendants['] speedy trial rights were effectively violated" (id.);
      (5)   "the Government failed to provide relevant and required exculpatory evidence and failed to produce any search warrant (instead relying on the 'application' for a warrant")" (id.); and,
      (6)   United States v. Simmons, 649 F.3d. 237 (4th Cir. 2011) requires vacation of his sentence.

Claim IV:     Prosecutorial misconduct:
      (1)   "The Government failed to provide relevant discovery materials. The presiding judge noted these significant deficiencies at trial" (§ 2255 Mot. 6 (citation omitted).)
      (2)   "The Government sought stipulations from counsel regarding evidentiary matters it fully knew to be either inconsistent or incorrect . . . ." (Id.)

### III. ALLEGED INEFFECTIVE ASSISTANCE

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of Strickland, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. Id. at 697.

#### A. Pretrial Proceedings

In Claim I(1), Noel states in sum, that counsel rendered ineffective assistance by "failing to move for a violation of the Defendant's Speedy Trial Rights, the delays associated with

6

the filing of the Superseding Indictment were on the part of the Government. There was no justifiable reason for any delay articulated on the record . . . ." (§ 2255 Mot. Ex. A, at 1.) In his Reply, he expounds: "Noel requested that his attorney . . . proceed to trial on the original Indictment . . . ." (Reply 3-4, ECF No. 192.) To the extent that Noel faults counsel for not following Noel's instruction to proceed to trial on the original Indictment, he states no claim for relief. The Superseding Indictment supplanted the original Indictment.

For the first time in his Reply, Noel alleges that he requested his attorney to "oppose the motion [for a continuance] and file a motion to dismiss based on a Speedy Trial Act[3] violation." (Id. at 4.) Counsel reasonably eschewed opposing the motion for a continuance and filing a motion to dismiss the Superseding Indictment because no Speedy Trial Act violation occurred.

---

[3] The Speedy Trial Act ("the Act") requires that "[a]ny information or indictment charging an individual with . . . an offense shall be filed within thirty days from the date [of] arrest[ ] . . . ." 18 U.S.C. § 3161(b). The Act also requires that the trial for a defendant who pleads not guilty take place within seventy days of the filing and making public of the information or indictment, or the date on which the defendant appeared before a judicial officer in that court on the pending charge, whichever is later. 18 U.S.C. § 3161(c)(1). If there is a violation of the Act, upon counsel's motion, the Court must dismiss the indictment. 18 U.S.C. § 3162(a)(2).

A grand jury indicted Noel on April 21, 2008, however, Noel was not arrested until September 29, 2008. The Court arraigned Noel on October 1, 2008. The Court set the trial date for December 3, 2008, within seventy days of the arraignment. See 18 U.S.C. § 3161(c)(1). On November 6, 2008, the grand jury returned a Superseding Indictment against Noel. On November 17, 2008, the Government moved for an unopposed continuance of Noel's trial, and the Court found the interests of justice warranted continuing the trial date until January 20, 2009. As of that date, no speedy trial violation had occurred, thus, counsel reasonably eschewed pursuing Noel's speedy trial claim because it lacked merit. To the extent that Noel argues that counsel's failure to object to continuing the trial to January 20, 2009 was somehow deficient, he fails to demonstrate any prejudice. Claim I(1) will be dismissed.

In Claim I(2), Noel faults counsel for failing to move for a Bill of Particulars.[4] Noel's claim is belied by the record. Counsel moved for a Bill of Particulars (ECF No. 31) and the Court granted the motion (ECF No. 32). Accordingly, Noel fails to demonstrate any deficiency of counsel. Claim I(2) will be dismissed.

---

[4] Clearly this claim was not tailored for Noel, but for his co-defendants. The Reply states: "The Government makes note that co-defendant Clifford Noel ("Noel") did file a Bill of Particulars which was granted by the Court . . . ." (Reply 4 (citation omitted).)

In Claims I(3) and I(11), Noel faults counsel for failing to challenge the sufficiency of the evidence prior to trial. In support of these claims, Noel states "there was at issue a defective search warrant and pieces of physical evidence to be challenged." (§ 2255 Mot. Ex. A, at 1.) Noel neither identifies on what grounds counsel could have challenged the sufficiency of the evidence or the purportedly defective search warrant nor identifies what physical evidence should have been suppressed. Noel fails to demonstrate deficiency of counsel or resulting prejudice based on these vague, conclusory allegations. Sanders v. United States, 373 U.S. 1, 19 (1963) (finding denial of § 2255 motion appropriate where it "stated only bald legal conclusions with no supporting factual allegations"). Accordingly, Claims I(3) and I(11) will be dismissed.

In Claim I(7), Noel faults counsel for "failing to properly object on the record regarding the missing search warrant. It was a defendant, Terrence Peters[,] who ultimately demanded to bring this to the Judge's attention after an apparent timid counsel refused to raise this issue at trial[.]" (§ 2255 Mot. Ex. A, at 1.) While Noel's claim as articulated makes no sense, the Court pieces together that Noel intends to argue that, because Terrence Peters, instead of Terrence Peters' counsel, brought to the Court's attention that he purportedly failed to

9

receive signed copies of the 2002 and 2003 search warrants (see Jan. 22, 2009 Tr. 483-88, 492-95) somehow Noel's counsel rendered ineffective assistance.

During trial, in response to the Court's inquiry, Noel's counsel agreed that she had received copies of the search warrants, with the attached affidavits signed by the affiant, the full report related to the execution of the warrant, and the inventory conducted. (Jan 23, 2009 Tr. 1-4, ECF No. 175-1.) Thus, Noel's conclusory allegations fail to demonstrate any deficiency of counsel or resulting prejudice. Accordingly, Claim I(7) will be dismissed.

In Claim I(12), Noel argues that counsel "failed to motion or move for a new jury pool after certain comments were voiced in the presence of potential jurors. A member of the panel indicated in front of other members of the panel that she was aware, or had read about the murder conviction of one of the defendants." (§ 2255 Mot. Ex. A, at 2.) Contrary to Noel's assertion, the record demonstrates that counsel moved to dismiss the juror pool on this basis. (See Jan. 20, 2009 Tr. 5-7, ECF No. 86.) The venirepersons assured the Court that they could remain impartial. In response to the motion, the Court decided to ask the jury pool additional questions to determine if each potential juror could render a fair and impartial decision after hearing the words "these people" and "murder." (Jan. 20, 2009

Tr. 7-9.)   Thus, Noel fails to demonstrate any deficiency of counsel or resulting prejudice, and Claim I(12) will be dismissed.

In Claims I(16) and I(19), Noel contends that counsel failed "to raise lack of or missing discovery in pre-trial motions" and failed "to object pre-trial that discovery was missing regarding the allegations in the Superseding Indictment." (§ 2255 Mot. Ex. A, at 2.)   In Claim I(9), Noel contends that counsel "failed to formally object to the withholding of witness names and/or relevant information to the Court[.]"   (Id.)   In Claim I(10), Noel contends that counsel "fail[ed] to challenge the Government's misconduct on the record, whereby jeopardizing appellate review[.]"   (Id.)   In Noel's Reply, he expounds on these four claims, and alleges that the Government "failed to provide impeachment evidence under Giglio v. United States, 405 U.S. 150 (1972), by comparing what [Michael] Matthews and [Anthony] Johnson said in last-minute discussions with the prosecutor just before trial and their statements in the debriefs.  Just before trial, Matthews and Johnson supplied additional information which was not reflected in their earlier interviews." (Reply 12-13; see id. at 11-12.) Noel's conclusory and terse allegations fail to provide a claim for relief.

Noel fails to identify what additional information Matthews and Johnson provided to the prosecutors in their statements or its impact upon his trial. Thus, Noel fails to demonstrate any prejudice from counsel's failure to object to the Government's failure to disclose the statements. Moreover, to the extent Noel seeks to rehash matters previously litigated in his Motion pursuant to Federal Rule of Criminal Procedure 33, the Court extensively addressed the underlying claim that the Government violated Giglio and progeny, "in not disclosing the statements made by two witnesses, Michael Matthews and Anthony Johnson, in their pre-trial preparation with the prosecutor" and found it lacked merit. United States v. Noel, No. 3:08cr198-03, 2009 WL 2767650, at *1-6 (E.D. Va. Aug. 24, 2009).[5] The Fourth Circuit affirmed. Peters, 392 F. App'x at 163. Claims I(9), I(10), I(16) and I(19) will be dismissed for lack of merit.

In Claim I(17) Noel states in sum, that counsel "fail[ed] to properly raise certain double jeopardy violations concerning prior acquitted conduct." (§ 2255 Mot. Ex. A, at 2.) In Claim

---

[5] The Court found that these statements were not material evidence for several reasons. First, the disclosure of the pretrial interviews of Matthews and Johnson "merely would have been cumulative impeachment evidence," Noel, 2009 WL 2767650, at *5, both witnesses "were cross-examined about the consistency of their statements," id., and "the testimony of at least three other witnesses both corroborated the details given by Matthews and Johnson and provided independent evidence of Noel's guilt." Id.

I(18), Noel states that "counsel should have moved to exclude evidence of Spencer Peters' 2005 arrest . . . ." (Id.) Noel's conclusory allegations, without any further explanation or supporting argument, fails to demonstrate any deficiency of counsel or resulting prejudice. See Sanders, 373 U.S. at 19. Claims I(17) and I(18) will be dismissed.

B.   **Trial Claims**

In Claim I(4), Noel faults counsel for failing to object to the introduction of photographs of "some of the defendants apparently brandishing assault weapons during the course of trial." (§ 2255 Mot. Ex. A, at 1.) In his Reply, Noel explains that:

> The subject photographs of weapons did not display any undeniable or irrefutable markings or alterations, visible serial numbers, to support the Government's claim of Noel's acknowledgment or involvement with what appeared to be weapons. The Government did not present any material weapons related to the photographs obtained from Peters' arrest in 2005. Without actual possession of those weapons in the photographs [Gov. Ex. 15 and 17], this evidence had no indicia of reliability and should never been allowed to be admitted as evidence. These photographs planted a picture in the mind of the jury and prejudiced Noel.

(Reply 10 (alteration in original).) To the extent Noel states a discernable claim, Noel fails to demonstrate any deficiency of counsel or resulting prejudice.

Counsel reasonably eschewed objecting to the admission of the photographs of the firearms during trial. First, Noel's

contention that the photographs only "appeared" to contain weapons, and without "actual possession of those weapons in the photographs" the photographs lacked "indicia of reliability," lacks merit. (Id.) At least four witnesses testified about the conspiracy's possession of firearms and identified the photographs as depicting firearms possessed by the conspiracy. Trial testimony established that firearms were commonly present in the houses where the conspiracy sold drugs. (Jan. 20, 2009 Tr. 71; Jan. 21, 2009 Tr. 433-34.) Anthony Johnson testified that he observed Noel with a handgun "[o]n a daily basis" or "[e]very time I seen him." (Jan. 21, 2009 Tr. 435.) Johnson also testified that Noel would answer the front door of the house with his gun pointed, and would "threaten to shoot them" and would tell people to go around to the back door. (Jan 21, 2009 Tr. 436-37.)

William K. Lucord, a patrol officer with the Henrico County Police, arrested Spencer Peters on May 16, 2005 after finding bullets, two firearms, and drugs in the car and on his person. (Jan. 21, 2009 Tr. 315-21.) Officer Lucord found two camera memory cards in the trunk of the car searched after Spencer Peters's arrest. (Jan. 21, 2009 Tr. 322.) Officer Lucord testified that Government Exhibits 15 through 17 were photographs recovered from the memory card. (Jan. 21, 2009 Tr. 322-23.) Several witness identified Government Exhibits 15 and

14

17 as photographs of firearms that the conspiracy members used as protection. (See, e.g., Jan 20, 2009 Tr. 71.)

Exhibit 15 depicted a number of assault rifles or "long guns" stored in the garage at Terrence Peters's ("Dred") child's mother's home. (Jan. 20, 2009 Tr. 70-71; Jan. 21, 2009 Tr. 292-93, 300-01.) Spencer Peters ("Smoke") placed the firearms in the garage. (Jan. 21, 2009 Tr. 293.) Spencer Peters would buy the firearms in the crack house or "off the street." (Jan. 21, 2009 Tr. 293.) Stanley Turner testified that he sold Spencer Peters the AR-15 firearm depicted in Exhibit 15 in exchange for approximately an ounce of crack cocaine. (Jan 21, 2009 Tr. 344-46.) Turner identified photographs of several other firearms that he sold to Spencer Peters in exchange for crack cocaine. (Jan. 21, 2009 Tr. 346-48.) Anthony Johnson testified that he sold an AK-47 to Spencer Peters in 2002. (Jan. 21, 2009 Tr. 434.) The firearm pictured in Exhibit 17 was identified as purchased "off the street" by Spencer Peters. (Jan 20, 2009 Tr. 149-51; see Jan 20, 2009 Tr. 71; Jan 21, 2009 Tr. 293.) When Spencer Peters purchased the firearm, he called co-conspirator Robert Jones, to come to the house he shared with Clifford Noel, to show him the firearm. (Jan 21, 2009 Tr. 292-94.) Robert Jones testified that Spencer Peters took the photographs of the firearms labeled as Government Exhibits 15-17 a few days before

15

Spencer Peters's arrest in 2005 and had shown the photographs to Jones. (Jan. 21, 2009 Tr. 294, 302.)

The record clearly establishes that the photographs depicted firearms used by the conspiracy. Noel fails to demonstrate any deficiency of counsel or resulting prejudice from counsel's failure to object to the introduction of the photographs of certain firearms as unreliable. Claim I(4) lacks merit and will be dismissed.

In Claim I(5), Noel faults counsel for "fail[ing] to use the various debriefings of the Government's witnesses to impeach them[.]" (§ 2255 Mot. Ex. A, at 1.) Similarly, in Claim I(13), Noel contends that counsel rendered ineffective assistance by "failing to effectively cross-examine the Government's witnesses[.]" (Id.) In his Reply, Noel names Spencer Peters's counsel, Mr. Eliades, and claims that counsel should have "impeached the Government witnesses who were mainly crack cocaine addicts" and "could have shown that these witnesses were testifying so they could receive some benefit from the Government such as a shorter sentence or dismissed charges." (Reply 5.) Finally, Noel suggests, in a conclusory manner, that counsel should have cross-examined Robert Jones, Everette Bolling, and Stanley Turner with their debriefings in order to demonstrate inconsistencies in their trial testimony. (Id.)

Counsel cross-examined each witness identified in Noel's Reply and elicited testimony about their participation in the drug conspiracy, their drug use, and the benefit they were receiving from the Government in exchange for their cooperation and testimony in the trial. (See Jan 20, 2009 Tr. 91-111; Jan 21, 2009 Tr. 302-313, 357-64, 413-19.)[6] Counsel also used the witnesses' prior statements to impeach their testimony and demonstrate inconsistencies. (See, e.g., Jan 20, 2009 Tr. 94-111; Jan. 21, 2009 Tr. 303-04, 357-64.) Noel fails to identify with specificity what further information counsel could have, or would have, elicited had she more thoroughly questioned the witnesses. Thus, Noel demonstrates no deficiency or prejudice. See Sanders, 373 U.S. at 19; cf. United States v. Terry, 366 F.3d 312, 316 (4th Cir. 2004) (observing that where a petitioner faults counsel for not calling a witness, the petitioner should provide "concrete evidence of what [the witness] would have testified to in exculpation"); Bassette v. Thompson, 915 F.2d 932, 941 (4th Cir. 1990) (dismissing claims where petitioner failed to make an adequate proffer of testimony of witness).

In his Reply, Noel also faults counsel's purported lack of preparedness for "fail[ing] to bring up in front of the jury" that cooperating witness Michael Matthews "admittedly

_____

[6] When asked by the Court, counsel agreed that the principle line of defense was that "these people would sell their souls in order to cut their time" in jail. (Jan. 21, 2009 Tr. 335.)

participated in the Carpenter murder[,] which the Government promised [Matthews that he] would not be charged with in exchange for his testimony at trial." (Reply 5.)[7] A review of the record demonstrates that "upon Noel's motion and the agreement of the prosecution . . . [no] witness was allowed to testify to the Carpenter murder in the federal case." United States v. Noel, No. 3:08cr186-03, 2009 WL 2496520, at *3 (E.D. Va. Aug. 14, 2009) (ECF No. 133). Clearly, counsel served Noel's best interests by keeping any reference to state murder charges out of the federal proceeding. Thus, Noel demonstrates neither deficiency nor prejudice and Claims I(5) and I(13) will be dismissed.

In Claim I(6), Noel argues that counsel "allowed their client(s) to stipulate to drug weights, quantities and purities which they knew (or alternatively, should have known) were inconsistent with the documented evidence in the record[.]" (§ 2255 Mot. Ex. A, at 1.) In his Reply, Noel clarifies that "none of the defendants . . . ever agree[d] to, requested to, stated anywhere orally or in writing on-the-record that they would stipulate to the drug analysis report." (Reply 6.) Noel claims that he requested counsel to have an independent drug lab

---

[7] The state court tried and convicted Noel of the murder of Ambrose Carpenter in October 2008 in state court. United States v. Noel, No. 3:08cr186-03, 2009 WL 2496520, at *2 (E.D. Va. Aug. 14, 2009) (ECF No. 133). Noel's conviction was vacated and the state nolle prossed the Carpenter murder charge. Id.

analysis performed. (Id.) Noel argues that "he never waived his Sixth Amendment right [under] the Confrontation Clause." (Id.)[8] The Court infers that Noel intends to fault counsel for lodging no objection to the Government's introduction of the drug analysis reports and not requiring an expert to testify as to the reports' authenticity.[9] Noel fails to demonstrate any deficiency of counsel or resulting prejudice from counsel's failure to object to the introduction of the drug analyses.

The three lab analyses (Exhibits 31, 33, 38) of the drugs recovered from a search of 3108 5th Avenue in November 2002 (Jan. 21, 2009 Tr. 196, 205-06), recovered from a search again in November 2003 (Jan. 21, 2009 Tr. 218, 226-27), and recovered from Spencer Peters' person after his arrest in 2005 (Jan. 21, 2009 Tr. 318, 325-26), were admitted into evidence without objection from counsel. In its witness list, the Government indicated that it intended to call three witnesses from the Department of Forensic Science to testify during trial. Noel

---

[8] To the extent Noel attempts to raise a Confrontation Clause claim for the first time in his § 2255 Motion, such claim would be barred, because he could have raised, but failed to raise, this claim on direct appeal. See Bousley v. United States, 523 U.S. 614, 622-23 (1998); United States v. Frady, 456 U.S. 152, 167-68 (1982).

[9] Both Noel and the Government state that counsel stipulated to the introduction of the lab analyses. However, neither party directs the Court to the portion of the trial transcript where such a stipulation was entered on the record. The record demonstrates that the three analyses were entered into the evidence without objection from counsel. (See Jan. 21, 2009 Tr. Tr. 196, 205-06, 218. 226-27, 318, 325-26.)

fails to demonstrate that, but for counsel's failure to object to the lab analyses of the drugs, a reasonable probability existed that the Government would not have been able to produce the relevant witness to testify as to the drug analyses' authenticity. Cf. United States v. Santiago, No. 3:09CR299, 2014 WL 4230441, at *4 (E.D. Va. Aug. 25, 2014). Moreover, counsel made a legitimate strategic choice to lodge no objection to the authenticity of the Government's forensic evidence of the crack cocaine, a readily provable fact, and, to instead, focus on challenging Noel's involvement in the conspiracy. See Lemon v. United States, 335 F.3d 1095, 1096 (8th Cir. 2003) (finding decision to stipulate to laboratory reports "part of a reasonable trial strategy" when counsel focused efforts on disproving possession of drugs instead); (see e.g., Jan. 22, 2009 Tr. 31, 33-37, ECF No. 117.)

Moreover, in light of the extensive evidence about the large quantities of crack cocaine sold during the same time period, Noel fails to demonstrate any prejudice from counsel's failure to object to the introduction of the lab analyses. The Government introduced the certificate of analyses from two raids of the drug house in 2002 and 2003 and from the drugs recovered from Spencer Peters after his arrest in 2005. Police recovered only a small amount of crack cocaine compared with the quantities attributable to the conspiracy as a whole. During

trial, the evidence demonstrated that the conspiracy distributed kilograms of crack cocaine between 2000 and 2008. The Presentence Report ("PSR") attributed 4.5 kilograms or more of cocaine base to Noel. (PSR Worksheet A, at 1.) Based on the evidence presented at trial, the Court found by a preponderance of the evidence that "[i]t is conservative to attribute 40 kilograms a year to the organization during the period when he was involved in it" (Sept. 25, 2009 Tr. 40) and that Noel "was involved at least three and a half years, at least three years . . . that's 120 kilograms." (Sept. 25, 2009 Tr. 35.) Thus, Noel fails to demonstrate any deficiency of counsel or prejudice based on her failure to object to the introduction of the lab analyses. Claim I(6) will be dismissed.

In Claim I(8), Noel faults counsel for "a total lack of preparation for jury trial proceedings. Very limited amount of time spent meeting with client, obtained no testimony of any outside investigators at trial to support their client's respective positions[.]" (§ 2255 Mot. Ex. A, at 1.) Noel's vague, conclusory allegations about counsel's deficiency fail to state a claim for habeas relief. See Sanders, 373 U.S. at 19. Moreover, Noel fails to proffer what concrete, exculpatory evidence "outside investigators" could have provided to bolster his defense. Terry, 366 F.3d at 316. Claim I(8) will be dismissed.

In Claim I(14), Noel contends that counsel "improperly influenc[ed] the defendant on the subject of whether or not to testify on their own behalf at trial." (§ 2255 Mot. Ex. A, at 2.) To the extent this claim applies to Noel, his claim lacks merit. Noel argues that had he "testified on his own behalf he could have refuted and rebutted the testimony of the Government's witnesses especially the witnesses who were allegedly Noel's customers" and he could have shown "he was in a buyer-seller relationship with these witnesses and not in a conspiracy." (Reply 9.) Entirely fatal to his claim, Noel makes no allegation that he informed counsel that he wished to testify and counsel advised him not to do so. Thus, he establishes no deficiency of counsel.

Even assuming Noel informed counsel that he wished to testify and she advised him against doing so, Noel also demonstrates no prejudice as he fails to demonstrate that, but for counsel's purported error regarding Noel's desire to testify, a reasonable probability exists that the jury would have found him not guilty of the conspiracy counts. Noel has failed to provide any explanation about why a jury would have given his testimony any weight in light of the overwhelming evidence of his guilt. See Terry, 366 F.3d at 316. Claim I(14) will be dismissed for lack of merit.

In Claim I(15), Noel contends that counsel "fail[ed] to even request an informant jury instruction[.]" (§ 2255 Mot. Ex. A, at 2.) Contrary to Noel's assertion, counsel filed several proposed jury instructions pertaining to Government informants and their testimony. (ECF No. 34, at 33-36.) The Court also ultimately gave an instruction on Government informants and their credibility. (ECF No. 66, at 20-21.) Noel fails to demonstrate deficiency of counsel or prejudice, and Claim I(15) will be dismissed.

## C.  Ineffective Assistance of Appellate Counsel

In Claim II(1), Noel states: "while counsel did challenge the sufficiency of the evidence on appeal as to Clifford Noel, no such similar challenge was raised as to either of the Noel brothers." (§ 2255 Mot. 5.) Noel's claim on its face makes no sense. Moreover, as Noel states, his counsel raised the sufficiency of the evidence on appeal. Claim II(1) lacks factual merit and will be dismissed.

In Claim II(2), Noel faults appellate counsel for failing to appeal vaguely described "issues surrounding the search warrant(s)." (Id.) Noel's conclusory allegations fail to state a claim for habeas relief. Sanders, 373 U.S. at 19.

"In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, the applicant must normally demonstrate" that appellate counsel

23

performed deficiently and that a reasonable probability of a different result exists. Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (citing Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)). Counsel had no obligation to assert all non-frivolous issues on appeal. Rather, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986) (quoting Jones v. Barnes, 463 U.S. 745, 751-52 (1983)). A presumption exists that appellate counsel "'decided which issues were most likely to afford relief on appeal.'" Bell, 236 F.3d at 164 (quoting Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993)). "'[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'" Id. (quoting Smith v. Robbins, 528 U.S. 259, 288 (2000)).

Noel fails to demonstrate that the ill-defined challenge to the search warrants he advances here was clearly stronger than issues counsel chose to pursue on appeal. (See supra Part I.) Thus, Noel has demonstrated no deficiency or prejudice, and Claim II(2) will be dismissed.

## III. DUE PROCESS CHALLENGES/PROSECUTORIAL MISCONDUCT

In Claims III and IV, Noel again rehashes claims previously raised in Claim I, however, he adds the gloss of due process and prosecutorial misconduct. Noel again provides no supporting facts for his conclusory claims as alleged on the standard habeas form. Instead, Noel directs the Court to "Exhibit B" and "Exhibit C" to support his claims, however, both exhibits merely consist of a variety of attached documents and pleadings which make no reference to any of the claims alleged.

To the extent Noel states discernable claims, the procedural default rule bars Claims III(1)-III(5) and IV(1) and IV(2) from review here, absent a showing of cause and prejudice or actual innocence, because Noel could have raised, but did not raise, these claims on direct appeal. See Bousley v. United States, 523 U.S. 614, 622-23 (1998); United States v. Frady, 456 U.S. 152, 167-68 (1982). Noel fails to show cause and prejudice or actual innocence. Thus, Claims III(1)-III(5) and IV(1) and (2) will be dismissed.[10]

---

[10] While the Government only argued that the procedural default rule barred Claim IV from review here, the Court may sua sponte raise procedural default where it would significantly advance judicial efficiency. Yeatts v. Angelone, 166 F.3d 255, 261 (4th Cir. 1999); Smith v. Virginia, No. 3:11CV06, 2012 WL 618973, at *3 (E.D. Va. Feb. 24, 2012). Because Noel's claims are repetitive, lack merit, and are frivolous, the Court sua sponte invokes procedural default.

In Claim III(6), Noel argues that United States v. Simmons, 649 F.3d 237 (4th Cir. 2011),[11] "directly effects the use of certain prior convictions, and therefore, at a bare minimum the sentence must be vacated and remanded for a re-sentencing hearing." (§ 2255 Mot. 6.) Noel fails to explain, and the Court fails to discern, how Simmons applies to Noel's sentence. Noel's conclusory and terse allegations fail to state a claim for relief. Sanders v. United States, 373 U.S. 1, 19 (1963). Claim III(6) will be dismissed.

## IV. OUTSTANDING MOTIONS

On October 11, 2013, Noel filed a "CITATION OF ADDITIONAL AUTHORITY" (ECF No. 201) in which he cites Alleyne v. United

---

[11] In Simmons, the United States Court of Appeals for the Fourth Circuit

> overruled prior decisions and held that, in deciding whether to enhance federal sentences based on prior North Carolina convictions, we look not to the maximum sentence that North Carolina courts could have imposed for a hypothetical defendant who was guilty of an aggravated offense or had a prior criminal record, but rather to the maximum sentence that could have been imposed on a person with the defendant's actual level of aggravation and criminal history.

United States v. Powell, 691 F.3d 554, 556 (4th Cir. 2012) (citing Simmons, 649 F.3d at 241). The Fourth Circuit has found that Simmons applies retroactively to cases on collateral review. United States v. Bowman, 561 F. App'x 294, 298 (4th Cir. 2014) (citing Miller v. United States, 735 F.3d 141, 145–47 (4th Cir. 2013)).

States, 133 S. Ct. 2151 (2013).[12] Noel has not filed a motion to amend to add the claim. Nevertheless, "[u]nder Rule 15(a) leave to amend shall be given freely, absent bad faith, undue prejudice to the opposing party, or futility of amendment." United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000) (citations omitted). As explained below, Noel's amendment is futile.

In Noel's rambling submission, Noel appears to argue that Alleyne requires that a § 851 sentencing enhancement must be submitted to the jury and therefore he should be resentenced. (Citation of Authority 4.) Noel fails to demonstrate that he can mount a meritorious claim based on the decision in Alleyne, because the Court found the § 851 sentence enhancement inapplicable to Noel during sentencing. (See Sept. 25, 2009 Tr. 23.) To the extent Noel also suggests that the district court improperly enhanced his sentence under the guidelines, Alleyne provides him no relief. See United States v. Mason, 547 F. App'x 235, 236 (4th Cir. 2013) (citation omitted) (explaining that Alleyne "did not disturb judicial factfinding at sentencing for facts that do not impact statutory punishment").

---

[12] In Alleyne, the Supreme Court addressed a defendant's mandatory minimum sentence of seven years for brandishing a firearm under 18 U.S.C. § 924(c)(1)(A)(ii). Alleyne, 133 S. Ct. 2155-56. The Supreme Court held that, other than prior convictions, "facts that increase [statutory] mandatory minimum sentences must be submitted to the jury." Id. at 2163.

Accordingly, Noel's attempts to amend (see ECF Nos. 201, 221)[13] will be denied as futile.

Noel also filed a "MOTION TO ORDER RESPONDENT TO SHOW CAUSE" ("Motion to Show Cause," ECF No. 224) in which Noel requests the Court direct the Government to respond to his various later filings. As discussed above, because Noel's claims lack merit, the Court fails to discern a need for any further Government response. Noel's Motion to Show Cause (ECF No. 224) will be denied.

## V. CONCLUSION

For the foregoing reasons, Noel's claims will be dismissed. Noel's request to amend Motion to Amend (ECF Nos. 201, 221) and Motion for Show Cause (ECF No. 224) will be denied. Noel's § 2255 Motion (ECF No. 166) will be denied and the action will be dismissed. A certificate of appealability ("COA") will be denied.[14]

---

[13] Noel filed a "MOTION TO TAKE JUDICIAL NOTICE OF ADJUDICATIVE FACTS" (ECF No. 221), wherein he explains that he "attempted to submit his Alleyne claim" in his document entitled "CITATION OF ADDITIONAL AUTHORITY." (ECF No. 221, at 1.) The Court construes this filing (ECF No. 221) as another attempt to amend.

[14] An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a COA. 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter,

The Clerk is directed to send a copy of this Memorandum Opinion to Noel and counsel of record.

It is so ordered.

/s/ _REP_

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: _December 16, 2014_

---

agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 & n.4 (1983)). Noel fails to satisfy this requirement.