IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.                              Criminal No. 3:08cr186-03

CLIFFORD NOEL


**MEMORANDUM OPINION**

This matter is before the Court defendant's Letter Motion for Compassionate Release (ECF No. 332) and the defendant's EMERGENCY MOTION FOR COMPASSIONATE RELEASE PURSUANT TO SECTION 603(b) OF FIRST STEP ACT AND 18 U.S.C. § 3582(C)(1)(A) (ECF No. 335). Having considered the motions, the United States' Response in Opposition to Defendant's Motion for Compassionate Release (ECF No. 338), the DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR COMPASSIONATE RELEASE (ECF No. 344), the JOINT STATUS REPORT REGARDING MOTION UNDER SECTION 603(b) OF FIRST STEP ACT (ECF No. 354), the presentence report (ECF No. 334) and the file, it is hereby ORDERED that the defendant's Letter Motion for Compassionate Release (ECF No. 332) and the defendant's EMERGENCY MOTION FOR COMPASSIONATE RELEASE PURSUANT TO SECTION 603(b) OF FIRST STEP ACT AND 18 U.S.C. § 3582(C)(1)(A) (ECF No. 335) will be denied.

## BACKGROUND

By Superseding Indictment returned on November 6, 2008, the defendant was charged with conspiracy to possess with intent to distribute cocaine base, in violation of 21 U.S.C. § 846, 841(a)(1) and 841(b)(1)(A)(iii) and with conspiracy to possess firearms in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(o). On January 23, 2009, a jury convicted Noel of Count One and found that the quantity of cocaine base involved in the offense was 50 grams or more. He also was convicted of Count Two. On September 29, 2009, the defendant was sentenced to be imprisoned for a term of 360 months on Count One of the Superseding Indictment and 240 months on Count Two of the Superseding Indictment, all to be served concurrently (ECF No. 143). The defendant was also sentenced to a term of supervised release of five years. His conviction and sentence were affirmed by the United States Court of Appeals for the Fourth Circuit (ECF Nos. 160, 161 and 162).

On December 16, 2020 (ECF No. 332), the defendant, acting *pro se*, filed a Letter Motion for Compassionate Release. The Federal Public Defender was appointed to represent the defendant and a more complete motion was filed on January 5, 2021 (ECF No. 335). In that motion, the defendant has shown that, on December 22, 2020, he tested positive for COVID-19 and since then he has suffered

2

from pneumonia, a bilateral pulmonary embolism, and has been hospitalized on three occasions to obtain urgent medical care.

It appears from the record that Noel suffers from asthma and respiratory illness. It further appears that he was hospitalized at the time his motion for compassionate release was filed by counsel (ECF No. 335) because of serious complications from COVID-19. His medical records show that, from early December until the middle of December 2020, the defendant suffered the conditions that are alleged in his petition.

His medical records also reflect that, on December 23, 2020, there were "no immediate concerns and that the defendant was working on rehabilitation and did not require supplemental oxygen." The medical records of December 31, 2020, state that the defendant was "doing well" and was "exercising without difficulty." On January 5, 2021, the medical records reflect that the defendant was noted to have improved and that he should be able to function with the activities of daily living without labored breathing. He was then discharged by the hospital to FCI Loretto and once he had returned to FCI Loretto he reported "no complaints." On January 7, 2021, the defendant, although receiving anticoagulation medication, reported that he was able to accomplish the activities of daily living but that he had some lingering cough without pain and no labored breathing upon climbing

3

stairs. In other words, it appears that the defendant contracted COVID-19, had serious medical consequences, and that he has recovered therefrom.

The record also reflects that the defendant's place of incarceration, FCI Loretto, experienced a serious outbreak of COVID-19 in December 2020. Indeed, on December 1, 2020, 30 inmates had tested positive for COVID-19 and by December 11, 609 inmates had tested positive (ECF No. 344, p. 7). The number of staff who had tested positive almost doubled, from 15 to 29 in the same period. Fortunately, it appears that the situation at FCI Loretto has improved materially. Evidence as of early March 2021 shows that 115 staff members and 65 inmates had been inoculated (out of a population of 761 inmates). And, the record shows that FCI Loretto has the December 2020 COVID-19 outbreak under control. Thus, as of January 14, 2021, when the Government filed its papers in this matter, FCI Loretto had one positive inmate test and zero inmate deaths. The record also shows that 718 of the inmates who were affected by COVID-19 have recovered.[1]

---

[1] At various points, Noel asserts that subsequent changes in the law would disqualify the conviction that was used as a triggering predicate and also asserts that the Court must calculate the applicable guideline range and then says "subsequent changes in the law brought about by the First Step Act and applied in the context of compassionate release, provide an additional basis to support of [sic] a 10-year, rather than a 20-year mandatory minimum

4

## DISCUSSION

The applicable statute, 18 U.S.C. § 3582(c)(1)(A), provides, in pertinent part, that, upon appropriate motion, the Court "may reduce the term of imprisonment . . . if it finds that 'extraordinary and compelling reasons' warrant such a reduction." It is settled that the burden is on the defendant to prove that extraordinary and compelling reasons exist for compassionate release under § 3582(c)(1)(A)(i). United States v. White, 378 F. Supp.3 784, 785 (W.D. Mo. 2019).

The "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering the Bureau of Prison's statutory role, and extensive

---

sentence which the Court should consider now in determining and imposing a new sentence." (ECF No. 335, p. 22). The Court does not understand that imposing a new sentence is the same thing as granting a compassionate release and is confused by the assertion of the arguments recited above which appear to be something contemplated to support a potential motion for reduction of sentence under the First Step Act. The fact that a potential First Step Act motion is contemplated is a fair reading of the above cited text and that reading is underscored by the fact that, in this filing (ECF No. 335, p. 20, fn. 37), the defendant says "This should not be construed as a motion for relief under §404 of the First Step Act on the basis of the Act's retroactive application of the Fair Sentencing Act of 2010's reduced penalties for crack cocaine offenses." Thus, the asserted "subsequent changes in the law" contention will not be considered in connection with compassionate release motions.

5

professional efforts to curtail the virus' spread. United States v. Raia, 954 F.3d 594, 597 (3rd Cir. 2020). In assessing whether the record shows the existence of extraordinary and compelling reasons for compassionate release, courts consider, inter alia, the guidance of the CDC, and non-binding policy statements of the United States Sentencing Guidelines. See United States v. Beck, 425 F. Supp. 3d 573, 581-82 (M.D.N.C. 2019). The policy statements are not binding but are informative and may be considered. United States v. McCoy, 981 F.3d 271-276 (4th Cir. 2020). The cases teach that, to constitute extraordinary and compelling reasons for compassionate release, medical conditions must be serious. Also, it is generally true that "chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." United States v. Ayon-Nunez, No. 1:16-cr-130, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020).

To establish existence of "extraordinary and compelling" reasons for compassionate release because of COVID-19, the defendant must show "both a particularized susceptibility to the disease and a particularized risk of contracting the disease at [his] prison facility." United States v. White, ___ F. Supp.3d ___, 2020 WL 1906845, at *1 (E.D. Va. April 23, 2020) (quoting United States v. Feiling, 453 F. Supp.3d 832, 840 (E.D. Va. 2020)).

6

### 1. Particularized Susceptibility

The defendant has established that he has antecedent respiratory disease and asthma. He has had COVID-19 and ensuing respiratory consequences of a serious nature. However, the record shows that his medical needs are being met while incarcerated. And, that includes the serious conditions that occurred after he contracted COVID-19.

Noel argues that he is likely to face even more serious medical consequences if he is re-infected with COVID-19. But, the record is insufficient to prove that assertion. The United States asserts that Noel, having had COVID-19, is better protected from re-infection. The record is likewise insufficient to prove that assertion as well.

Where, as here, the record is that a defendant has contracted, and recovered from COVID-19, and that the defendant suffered ensuing medical conditions, as a result of COVID-19 and that those ensuing conditions, although serious, are being adequately treated in the prison system, particularized susceptibility to future consequences cannot be proved by speculation and unsupported assertions.

### 2. Particularized Facility Risk

The defendant's facility of incarceration is FCI Loretto. Noel has shown that the facility experienced a rampant outbreak of

7

COVID-19 in December 2020 when, in a 10-day period, the number of cases of COVID-19 among staff at FCI Loretto doubled (15 to 29) and the number of inmate positivity went from 30 to 609. However, by January 2021, the record shows one positive test among inmates, no deaths, and that 718 previously infected inmates have recovered. It thus appears, from the record, that FCI Loretto has, as the United States puts it, weathered the storm.

On the complete record, the proofs do not satisfy Noel's burden on either facet of the compassionate release test, even though both facets were met when Noel originally filed his motion.

3. **Assessment Under 18 U.S.C. § 3553(a)**

But, even if Noel had met the particularized risk assessment and the particularized facility assessment (facets of the test), it would be appropriate to deny compassionate release in perspective of the sentencing factors prescribed by 18 U.S.C. § 3553(a). Compassionate release, of course, is appropriate only where the defendant is not a danger to the safety of any other person or of the community. The defendant argues that he is not a danger to the community. That, he says, is largely because he has "strong familial ties" to support his reintegration to society on release; because he has "made the most of his incarceration;" and because his record of disciplinary infractions is slight.

8

It appears that, indeed, Noel has strong familial ties and that he has made great strides while he has been incarcerated. Also, it appears that his record of disciplinary infractions is slight. However, the fact of familial ties and the fact that Noel has made great strides while incarcerated (including having taken 1157 hours of course work, including classes in computer skills, forklift safety, and life skills and achieving his GED and working constructively on a responsible job in prison) do no not overcome the serious nature of the offenses of conviction.

It simply cannot be ignored that Noel was a leader in the conspiracy and that the conspiracy lasted over two years distributing approximately 40 kilograms per year, a vast quantity of drug distribution. Drug distribution is itself a danger to society and the seriousness of the defendant's conduct in that regard cannot be underestimated. Nor can the fact that the group of which he was a member actively employed weaponry as part of the conspiracy. And, indeed, Noel used a firearm to threaten drug customers at one of the conspiracy's distribution locations and he carried firearms at another location according to the record.[2]

---

[2] The Government makes much of the fact that the defendant was convicted for murder in the Circuit Court of the City of Richmond. However, that conviction was vacated and a new trial was granted because of discovery violations. It would be unfair to speculate what a result of a new trial would have been. The state declined to proceed with those charges in view of the fact that the

The original sentence in this case serves to protect the public, to promote respect for the law, and to deter the defendant. And, the application of the factors under § 3553(a) here to the defendant's motion necessitates that the motion be denied.

## CONCLUSION

For the reasons set forth above, the defendant's Letter Motion for Compassionate Release (ECF No. 332) and the defendant's EMERGENCY MOTION FOR COMPASSIONATE RELEASE PURSUANT TO SECTION 603(b) OF FIRST STEP ACT AND 18 U.S.C. § 3582(C)(1)(A) (ECF No. 335) will be denied.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: April 22, 2021

---

Government was prosecuting the offenses of which the defendant was convicted.

10